IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

RICHARD R. WHITECOTTON                               PLAINTIFF

v.                              CIVIL NO. 17-2154

NANCY A. BERRYHILL, Commissioner
Social Security Administration                                   DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Richard R. Whitecotton, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.**      **Procedural Background:**

Plaintiff protectively filed his current applications for DIB and SSI on July 17, 2014, alleging an inability to work since March 31, 2012, due to severe refractory hypertension; sleep apnea; atherosclerotic cerebrovascular disease; high blood pressure; pain in the legs, hips and arms; and knots under the skin. (Tr. 85, 199, 206). An administrative hearing was held on October 28, 2015, at which Plaintiff appeared with counsel and testified. (Tr. 55-82).

By written decision dated April 22, 2016, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 21).

1

Specifically, the ALJ found Plaintiff had the following severe impairments: essential hypertension, coronary artery disease, congestive heart failure, peripheral vascular disease, obesity and an adjustment disorder.  However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4.  (Tr. 22).  The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he is able to perform work limited to simple, routine and repetitive tasks, involving only simple, work-related decisions with few, if any workplace changes and no more than incidental contact with co-workers, supervisors and the general public.

(Tr. 24). With the help of a vocational expert, the ALJ determined Plaintiff could perform work as an addresser, a stuffer, and an escort vehicle driver.  (Tr. 29).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on July 3, 2017. (Tr. 1-6).  Subsequently, Plaintiff filed this action.  (Doc. 1).  Both parties have filed appeal briefs, and the case is before the undersigned for report and recommendation.  (Docs. 14, 15).

The Court has reviewed the entire transcript.  The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.     Evidence Presented:**

Plaintiff participated in an administrative hearing before an ALJ on October 28, 2015. (Tr. 55-82).  Plaintiff's past relevant work consists of a work as a maintenance mechanic and a construction worker I.  (Tr. 77).

The pertinent medical evidence during the relevant time period reflects the following. On November 6, 2012, Plaintiff was seen by Dr. John Urban to establish care. (Tr. 382-383). Plaintiff complained of an elevated blood pressure, fatigue, chest pains and dizziness. Plaintiff reported he stopped taking his hypertension medication six to seven years ago. Plaintiff reported experiencing chest pain and pain into his left arm over the past few week. Plaintiff was assessed with benign essential hypertension and prescribed medication.

On November 13, 2012, Plaintiff was seen by Dr. Urban for a follow-up for his high blood pressure. (Tr. 380-382). Plaintiff reported a very mild bout of chest pain. Plaintiff also complained of chronic calf pain. Plaintiff denied experiencing depression or anxiety. After examining Plaintiff, Dr. Urban diagnosed Plaintiff with benign essential hypertension, knee joint pain and essential hypertriglyceridemia.

On April 29, 2013, Plaintiff was seen for a follow-up for his blood pressure, a medication refill and back and hip pain. (Tr. 379-380). Dr. Urban noted Plaintiff reported that his blood pressure ran a little high at times but he had not taken nitroglycerin. Plaintiff reported daily caffeine consumption and smoking. Plaintiff denied dyspnea, but reported occasional chest pain but not severe enough to take nitroglycerin. Plaintiff was assessed with benign hypertension and chest pain or discomfort. Plaintiff was referred for a cardiac stress test to be performed on May 14, 2013.

On February 10, 2014, Plaintiff entered the Mercy Hospital Fort Smith emergency room complaining of shortness of breath. (Tr. 310-320). Plaintiff denied experiencing chest pain and reported he had not been taking his blood pressure medication. Plaintiff denied fatigue, leg swelling, myalgias, back pain, chest pain, weakness, headaches or confusion.

3

Plaintiff reported that he smoked one package of cigarettes daily. Upon examination, Dr. Stephen Nelson noted Plaintiff's heart had a normal rate and heart sounds with no evidence of gallop, friction rub or murmur. Plaintiff had normal breath sounds and he was not in respiratory distress. Plaintiff's musculoskeletal exam revealed Plaintiff had normal range of motion. Plaintiff was found to have normal coordination. Plaintiff was diagnosed with hypertension, an abnormal EKG, dyspnea and tobacco abuse. Plaintiff was prescribed medication and discharged.

On February 17, 2014, Plaintiff reported that he was concerned about his elevated blood pressure. (Tr. 378-379). Dr. Thinh Nguyen noted Plaintiff was started on hypertension medication by an emergency room doctor one week ago. Plaintiff reported that he continued to feel lightheaded and shaky. Upon examination, Dr. Nguyen noted Plaintiff had a normal heart rate and rhythm. Plaintiff had abnormal heart sounds and a murmur was heard at 2/6 SEM best at RUSB. There was no edema present. After examining Plaintiff, Dr. Nguyen assessed Plaintiff with a murmur and benign essential hypertension. Plaintiff was prescribed medication and instructed to return in two weeks.

On May 2, 2014, Plaintiff was seen by Dr. Joseph W. Forney due to his chest pain. (Tr. 337-340). Plaintiff's chief complaint was chronic fatigue and shortness of breath. Plaintiff reported experiencing shortness of breath at night. Dr. Forney noted Plaintiff had gone to the emergency room for this issue the previous February. Dr. Forney noted that a review of the emergency room records indicated Plaintiff left against medical advice. Plaintiff reported his hypertension was recently discovered, and that he did not know how long he had had elevated blood pressure. Plaintiff reported ongoing significant dyspnea on exertion. Plaintiff reported he could walk about a block on level ground without stopping. Dr. Forney recommended that

4

Plaintiff undergo a sleep study noting Plaintiff indicated he would not wear a CPAP mask. Plaintiff reported he was under a lot of stress as he was taking care of a son with diabetes and a terminally ill fiancé. After examining Plaintiff, Dr. Forney diagnosed Plaintiff with chest pain, hypertension, congestive heart failure, chronic obstructive pulmonary disease, smoker, bruit of left carotid artery, and shortness of breath.

On May 14, 2014, Plaintiff was seen by Dr. Forney for his chest pain. (Tr. 333-336, 364). Dr. Forney noted Plaintiff had severe stage two hypertension with left ventricular hypertrophy. Plaintiff complained of fatigue, atypical chest pain, dizzy spells with diplopia. Dr. Forney noted Plaintiff's carotid Doppler revealed moderate disease in both common carotid arteries and possibly some plaque disease in the left subclavian. Dr. Forney noted Plaintiff's blood pressure was a "bit better." Dr. Forney assessed Plaintiff with chest pain, hypertension, congestive heart failure, chronic obstructive pulmonary disease, smoker, bruit of left carotid artery, and shortness of breath.

On June 6, 2014, Plaintiff complained of left wrist pain after falling due to dizziness three or four weeks ago. (321, 376-378). Plaintiff reported that his heart doctor had recently changed his medication but he was unsure what changes were made. Plaintiff was noted to have a known bicuspid aortic valve with some blockage of the arteries. Plaintiff was noted to have high blood pressure upon exam. Plaintiff reported drinking three to four cups of Coke a day and smoking daily. Plaintiff underwent a left wrist x-ray that revealed no acute bony abnormality. Upon examination, Plaintiff's heart had regular rate and rhythm with normal sounds. There was no edema present. Plaintiff was diagnosed with wrist joint pain and benign essential hypertension.

5

On June 13, 2014, Plaintiff was seen by Dr. Forney for his chest pain. (Tr. 330-332). Dr. Forney noted Plaintiff's cardiac stress test was abnormal revealing a fixed anterior wall defect. Dr. Forney noted Plaintiff had known atherosclerotic vascular disease in his carotid arteries and left subclavian artery. Plaintiff was noted to have very severe hypertension that was difficult to control. Plaintiff reported experiencing a lot of fatigue and difficulty with shortness of breath at night which improved some when his blood pressure was down. Dr. Forney noted Plaintiff had elevated pressure upon examination. Dr. Forney noted Plaintiff was under a lot of stress caring for his mother and also his fiancé who had terminal cancer. Dr. Forney recommended that Plaintiff undergo a cardiac catheterization. Plaintiff's medication was increased to help control his blood pressure. Dr. Forney assessed Plaintiff with chest pain, hypertension, congestive heart failure, chronic obstructive pulmonary disease, bruit of left carotid artery, smoker, shortness of breath and anxiety.

On July 16, 2014, Plaintiff was seen by Dr. Forney for his chest pain and fatigue. (Tr. 326-329, 369). Dr. Forney noted Plaintiff was scheduled for a cardiac catheterization but was unable to make the appointment due to the death of his fiancé. Plaintiff reported he was under a lot of stress and was now taking care of his fiancé's children. Plaintiff reported that he awakened at night short of breath and gasping for air and frequently woke up with a headache. Dr. Forney noted Plaintiff had an abnormal cardiac stress test and there was concern that Plaintiff might have coronary artery disease. At the time of the exam, Dr. Forney noted Plaintiff had a markedly elevated blood pressure. Dr. Forney noted Plaintiff would return the following week for a coronary angiogram and that a sleep study would be ordered.

On August 18, 2014, Plaintiff underwent pulmonary function testing that revealed mild restriction. (Tr. 394-403).

On August 19, 2014, Dr. Brett Alberty, a non-examining medical consultant, completed a RFC assessment opining that Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds; could stand and/or walk about six hours in an eight-hour workday; could sit about six hours in an eight-hour workday; could push or pull unlimited, other than as shown for lift and/or carry; and that postural, manipulative, visual, communicative or environmental limitations were not evident. (Tr. 90-92). On November 19, 2014, after reviewing the record, Dr. Patrick Fields affirmed Dr. Alberty's opinion. (Tr. 114-116).

On September 23, 2014, Plaintiff was in for a follow-up for his hypertension and back pain. (Tr. 423-424). Dr. Nguyen noted Plaintiff also reported upper respiratory symptoms that began the previous week. Plaintiff reported low back and hip pain that did not improve with ibuprofen. Plaintiff reported feeling tired. After examining Plaintiff, Dr. Nguyen assessed Plaintiff with benign essential hypertension, lumbago and numbness.

On October 10, 2014, Plaintiff underwent an x-ray of the lumbar spine that revealed mild degenerative change. (Tr. 435).

On October 14, 2014, Dr. Forney completed a cardiac medical assessment opining Plaintiff was limited to standing/walking less than two hours and sitting at least six hours. (Tr. 296-299). Dr. Forney indicated Plaintiff would need to shift positions and to take unscheduled breaks. Dr. Forney opined Plaintiff could lift and carry up to twenty pounds frequently and could occasionally twist, stoop (bend) and crouch/squat. Dr. Forney indicated Plaintiff should avoid all exposure to dust, fumes and irritants.

On October 15, 2014, Plaintiff was seen by Dr. Forney for his hypertension. (Tr. 410-413). Dr. Forney noted Plaintiff had been noncompliant with some of his follow-up visits due to personal social problems. Dr. Forney noted Plaintiff's fiancé recently died of cancer and that Plaintiff was taking care of his fiancé's sixteen year old daughter and was in a custody battle for her. Dr. Forney noted Plaintiff had very severe refractory hypertension that was difficult to control. Plaintiff was noted to also have chest pain with an abnormal cardiac stress test but had been unable to have a cardiac catheterization. Dr. Forney opined that if Plaintiff could reduce his stress and lose some weight his blood pressure would improve. Dr. Forney noted Plaintiff's mild congestive heart failure had resolved. Plaintiff was to return for further testing.

On March 18, 2015, Plaintiff was seen by Kelly Hubbard, APN. (Tr. 466-468). Plaintiff was in for a follow-up for his hypertension and to receive medication refills. Plaintiff reported that he knew his blood pressure was chronically elevated with very high readings. Plaintiff reported his only symptom was that his face and head turned red. Plaintiff also reported experiencing panic attacks that were helped with medication. Plaintiff reported several stressors to include his wife's illness and death, his son's recent diagnosis of diabetes, and the adoption of his stepdaughter. Plaintiff requested a referral to pulmonology due to his shortness of breath. Plaintiff reported experiencing shortness of breath with walking to the parking lot and back and noted that he often awakened at night short of breath. Plaintiff was assessed with essential hypertension, chronic obstructive pulmonary disease, anxiety and smoking. Plaintiff was instructed on medication compliance, weight management, regular exercise, a low sodium diet, regular home blood pressure monitoring and avoidance of tobacco.

On April 2, 2015, Dr. Tjandra Sarlkun noted Plaintiff reported experiencing dyspnea with activities and that he was managing his hypertension with multiple medications. (Tr. 436-

8

437). Plaintiff reported experiencing fatigue and was positive for a cough and shortness of breath. Plaintiff denied experiencing behavioral problems, confusion or agitation. Upon examination, Dr. Sarlkun noted Plaintiff's heart had a normal rate without gallop, friction rub or murmur. There was no edema present and Plaintiff was alert and oriented. Plaintiff was assessed with shortness of breath and tobacco abuse. Plaintiff was scheduled for a pulmonary function test and counseled on tobacco cessation.

On April 6, 2015, Plaintiff reported right leg pain to Dr. John Jacobs. (Tr. 465-466). Plaintiff complained of low back and right hip pain for many years that had worsened over the past month. Plaintiff reported experiencing numbness and tingling in the right lower extremity. Plaintiff also reported anxiety with persistent worry. Plaintiff denied chest pain, palpitations or dyspnea. Upon examination, Dr. Jacobs noted tenderness to palpation in the back. Plaintiff had a positive straight leg raise on the right. Plaintiff maintained a normal gait and stance. Dr. Jacobs assessed Plaintiff with lumbago and anxiety.

On June 16, 2015, Plaintiff was seen by Dr. Jacobs for streaks of redness and tenderness in his left leg. (Tr. 464-465). Plaintiff also reported experiencing headaches with blurred vision noting that his blood pressure was high. Plaintiff was concerned that he might have deep vein thrombosis in his left leg. Dr. Jacobs noted Plaintiff was quite hypertensive and that this had never been controlled at the clinic. Dr. Jacobs noted Plaintiff reported multiple areas of pain to include the legs, lower back, shoulders and arms. Plaintiff reported that he was not feeling poorly or tired. Upon examination, Dr. Jacobs noted Plaintiff's heart rate and rhythm were normal. Plaintiff's left lower extremity revealed a palpable tender "cord" running from the medial, mid-calf up the medial knee and a short distance into the lower thigh. Dr. Jacobs noted that Plaintiff's complaints and examination findings were quite suspicious of

9

thrombophlebitis. A Doppler study was ordered. Dr. Jacobs noted Plaintiff acknowledged the fact that he had been non-compliant with medication at times and that he continued to smoke.

On June 17, 2015, Plaintiff was seen by Dr. Forney for his congestive heart failure and hypertension. (Tr. 448-451). Dr. Forney noted Plaintiff had been somewhat noncompliant with follow-up visits and appointments for testing. Plaintiff reported that he continued to have dyspnea with exertion. Dr. Forney noted Plaintiff had an abnormal stress test but never came in for further testing. Dr. Forney noted that he did a workup on Plaintiff to determine secondary causes for the severe hypertension and all testing had been negative. Smoking cessation was again addressed with Plaintiff. Dr. Forney noted Plaintiff's congestive heart failure had resolved with diuretic therapy. Dr. Forney noted Plaintiff had a 2/6 systolic ejection murmur heard loudest over the aortic area. Carotid upstrokes were not diminished and Plaintiff had mild peripheral edema with some mild erythema and 2 focal areas of the left calf. Dr. Forney recommended a cardiac catheterization. Plaintiff wanted to think about this procedure. Plaintiff also needed to undergo an echocardiogram and a renal arteriogram.

On June 18, 2015, Plaintiff was seen by Dr. Jacobs for a follow-up for his left leg, lab results and Doppler. (Tr. 462-463). Dr. Jacobs noted Plaintiff's blood pressure was improving but was still elevated. The importance of medical compliance was stressed to Plaintiff. Upon examination, Dr. Jacobs noted Plaintiff's respiration rhythm and depth were normal; that Plaintiff's heart rate and rhythm were normal; and that a murmur was heard. Plaintiff's leg was noted as improving and a Doppler study was negative for deep vein thrombosis. Plaintiff was to continue with his medication. Dr. Jacobs requested that Plaintiff consult with cardiology.

On June 26, 2015, Plaintiff reported that he continued to experience left leg pain and tenderness. (Tr. 462). Dr. Jacobs noted the cardiologist still had concerns about Plaintiff's blood pressure. Plaintiff reported that the cardiologist was upset to discover that his office had not called in a prescription for clonidine that had subsequently been prescribed by Dr. Jacobs. Dr. Jacobs noted Plaintiff's phlebitis was better with less swelling and pain. Plaintiff reported that he had been eating recklessly and not adhering to a diet. Upon examination, Dr. Jacobs noted Plaintiff's leg was much improved and that his cranial nerves were normal. Plaintiff was assessed with thrombophlebitis, pain in the lower leg and accelerated essential hypertension.

On July 1, 2015, Plaintiff was seen by Dr. Forney for a follow-up visit. (Tr. 493-498). Dr. Forney noted Plaintiff's blood pressure was much better since adding clonidine. Plaintiff reported his pressures had been "running really good" at home. Plaintiff had lost eighteen pounds and Dr. Forney noted Plaintiff looked a lot better. Dr. Forney noted Plaintiff had an echocardiogram pending and Plaintiff had left leg tenderness. Plaintiff was breathing better and denied chest pain. Plaintiff was advised to start a stool softener, as Plaintiff had some mild constipation thought to be caused by the clonidine. Upon examination, Dr. Forney noted Plaintiff's heart had regular rate and rhythm and no murmurs; no swelling or deformity of the musculoskeletal system; 2+ peripheral pulses throughout; and normal strength, tone and reflexes. Plaintiff was urged to stop smoking.

On July 1, 2015, Plaintiff also underwent an echocardiogram that revealed normal global left ventricular systolic function; moderate eccentric left ventricular hypertrophy; moderately increased left ventricular internal cavity size; mild to moderate aortic valve

11

sclerosis/calcification without any evidence of aortic stenosis, mild gradient likely secondary to severe AI; and severe aortic insufficiency. (Tr. 501-502).

On September 11, 2015, Plaintiff underwent a psychological evaluation performed by Dr. Robert L. Spray, Jr. (Tr. 507-514). Plaintiff reported that he had last worked one year ago helping someone work on a home. Plaintiff reported he could no longer do very hard work. Plaintiff reported that his fiancé died the previous July after an eight year fight with cancer. Dr. Spray noted Plaintiff lived in a home with his two children. Plaintiff reported that self-care was getting harder due to his physical condition and that sometimes he had trouble being motivated. Plaintiff could drive and reported that his children sometimes helped with the shopping. Plaintiff reported that he performed household chores, but could not do a lot of bending. Plaintiff indicated he related well to his children, friends and previous co-workers. Dr. Spray noted Plaintiff drove himself to the evaluation and appeared alert and cooperative. Dr. Spray assessed Plaintiff with an adjustment disorder with depressed and anxious mood and psychological factors affecting COPD. Dr. Spray also completed a residual functional capacity assessment secondary to mental impairments wherein he opined Plaintiff had mild to moderate limitations due to situational depression.

On December 28, 2015, Plaintiff underwent a mental diagnostic evaluation performed by Dr. Spray. (Tr. 521-524). Plaintiff reported that he was frustrated with life and had a short fuse sometimes. With respect to his anxiety, Plaintiff reported experiencing shortness of breath, nausea, rapid heartbeat and feeling of things closing in. Plaintiff reported taking a variety of medications. Plaintiff reported he had worked in construction for most of his life but had not work in one and one-half years. Plaintiff reported that he smoked daily and drank three to five glasses of Mountain Dew each day. Dr. Spray noted Plaintiff drove himself to the

12

evaluation. In summary, Dr. Spray opined that Plaintiff had chronic persistent depression that had been more severe recently due to life events. Dr. Spray noted Plaintiff reported panic attacks and that he avoided groups and tried to avoid conflict. With respect to day-to-day functioning, Plaintiff reported that he was a lot slower. Plaintiff reported he did some household chores and prepared simple meals. Dr. Spray noted Plaintiff demonstrated mild difficulty with attention and concentration but persisted well during the exam.

On January 12, 2016, Plaintiff underwent a general physical examination performed by Dr. Michael R. Westbrook. (Tr. 516-520). Plaintiff complained of fatigue, shortness of breath, neuropathy in the legs, and uncontrolled hypertension. Plaintiff also reported that all of his joints hurt. Plaintiff reported he was a daily smoker. Upon examination of Plaintiff's spine and extremities, Dr. Westbrook noted Plaintiff was within normal limits. Plaintiff was negative for a straight leg raise. Dr. Westbrook noted decreased triceps, patellan and Achilles reflexes. No muscle weakness, muscle atrophy or sensory abnormalities were found. Plaintiff's gait and coordination were within normal limits. A limb function evaluation revealed Plaintiff could hold a pen and write, touch fingertips to palm, oppose thumb to fingers, pick up a coin, stand/walk without assistive devices, and squat/arise from a squatting position with assistance, but could not walk on heel and toes. Plaintiff was found to have seventy-five percent grip strength, bilaterally. Dr. Westbrook assessed Plaintiff with back pain, heart murmur, chest pain, neuropathy, hypertension and nicotine dependence. Dr. Westbrook opined Plaintiff had mild limitations.

### III.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th

Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet

14

or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

**IV.     Discussion:**

Plaintiff argues the following issues on appeal: 1) the ALJ's RFC finding is contrary to the evidence; and 2) Plaintiff cannot perform the jobs identified by the ALJ.

**A.     Subjective Complaints and Credibility Analysis:**

We now address the ALJ's assessment of Plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors. A review of the

15

record reveals that during the relevant time period, Plaintiff was able to take care of his terminally ill fiancé until her death in July of 2014, as well as his son who has diabetes; to do household chores, slowly; to take care of his personal needs; to prepare simple meals; to drive; to shop for groceries and necessities with his children; to handle finances; and to talk on the telephone or visit with others in person for short periods of time.

With respect to Plaintiff's alleged impairments, the record revealed that Plaintiff was treated conservatively and appeared to experience some relief with the use of medication. See Black v. Apfel, 143 F.3d 383, 386 (8th Cir.1998); See Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992) (course of conservative treatment contradicted claims of disabling pain). While the medical evidence revealed that Plaintiff's hypertension was at times difficult to control, when Plaintiff started taking clonidine his blood pressure improved. In fact, on July 1, 2015, Plaintiff reported his blood pressure at home had been "really good." Dr. Forney's treatment notes from July 1, 2015, also revealed that Plaintiff's heart had a regular rate and rhythm and no murmurs; Plaintiff had no swelling or deformity of the musculoskeletal system; Plaintiff had 2+ peripheral pulses throughout; and Plaintiff had normal strength, tone and reflexes.

With respect to Plaintiff's alleged mental impairments, a review of the record failed to establish that Plaintiff sought on-going and consistent treatment from a mental health provider during the time period in question. See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against plaintiff's claim of disability).

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, he has not established that he is unable to engage in any gainful activity. Accordingly, the Court

16

concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

### B.     ALJ's RFC Determination and Medical Opinions:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In the present case, the ALJ considered the medical assessments of examining and non-examining agency medical consultants, Plaintiff's subjective complaints, and his medical records when he determined Plaintiff could perform sedentary work with limitations. The Court notes that in determining Plaintiff's RFC, the ALJ discussed the medical opinions of treating, examining and non-examining medical professionals, and set forth the reasons for the weight given to the opinions. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining

17

physicians")(citations omitted); Prosch v. Apfel, 201 F.3d 1010 at 1012 (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole).

Plaintiff argues that the ALJ improperly discounted Dr. Forney's October 2014 cardiac assessment that included some limitations that were not included in the RFC determination, and failed to include all of the mental limitations expressed by Dr. Spray. After review, the Court finds that the ALJ did not err in weighting the opinions of Drs. Forney and Spray. The ALJ declined to give controlling weight to these medical professionals' opinions for good and well-supported reasons. See Goff v. Barnhart, 421 F.3d 785, 790–91 (8th Cir. 2005) ("[A]n appropriate finding of inconsistency with other evidence alone is sufficient to discount [the treating physician's] opinion."). The ALJ also took Plaintiff's obesity into account when determining Plaintiff's RFC. Heino v. Astrue, 578 F.3d 873, 881-882 (8th Cir. 2009) (when an ALJ references the claimant's obesity during the claim evaluation process, such review may be sufficient to avoid reversal). Based on the record as a whole, the Court finds substantial evidence to support the ALJ's RFC determination.

### C. Hypothetical Question to the Vocational Expert:

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing work as an

addresser, a stuffer, and an escort vehicle driver. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996) (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**V. Conclusion:**

Based on the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 20th day of April 2018.

/s/ *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE